PROVIDED TO AVON PARK CORRECTIONAL INSTITUTION ON 2-4-25 FOR MAILING BY LB

# IN THE UNITED STATES DISTRICT COURT OF THE NORTHERN DISTRICT OF FLORIDA

RICKY   OLIVER,                    Case No. TBD    1:25CV48 MCR/ZCB
Plaintiff,

v.

SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS (FDC),
CENTURION HEALTH, CORRECTIONAL HEALTHCARE,
CENTURION OF FLORIDA, LLC,
WARDEN JOHN/JANE DOE, (Cross City CI),
WARDEN DAWSON, (Avon Park CI),
JOHN/JANE DOE, CHO (Chief Health Officer Cross City Correctional Institute),
JOHN/JANE DOE, FDC, TRANSPORT OFFICER (TBN, Cross City CI),
L. PETERSEN, (ARNP, Cross City CI)
D. COFFEY, (LPN, Cross City CI)
M. HYATT, (LPN, Cross City CI)
DR. EDUARDO, CHO (Avon Park CI), et. al.,
Defendants.

_____/

## PLAINTIFF'S 42 U.S.C. §1983 CIVIL RIGHTS COMPLAINT
(Trial by jury requested)

### A. INTRODUCTION

This is a civil rights action filed by Plaintiff, Ricky   Oliver, pro se, seeking relief for damages under 42 U.S.C. §1983 for the violation of his constitutional rights under the Eighth and Fourteenth Amendments. This is a Section 1983 civil complaint that centers on the deliberate indifference to an incarcerated individual's serious medical needs, where each defendant acted "under color of state law" and that their actions deprived the incarcerated individual of a federally protected constitutional right, specifically

1

related to inadequate medical care, essentially violating Plaintiff's Eighth Amendment and Fourteenth Amendment rights. Such deliberate indifference resulted in unnecessary pain and suffering (physically, mentally and emotionally), causing and continuing to cause irreparable harm. The Defendants are being sued in both their official and individual capacities.

## B. PARTIES, JURISDICTION, AND VENUE

**Plaintiff**:

**Ricky   Oliver:** The Plaintiff, a ward of the State of Florida, is an inmate in the custody of the Florida Department of Corrections (FDC), currently incarcerated at Avon Park Correctional Institute, Avon Park, Florida. At app relevant times described herein, Plaintiff was housed at either Cross City Correctional Institute (CCCI) or Avon Park CI (APCI). Present address: Ricky   Oliver #102311, Avon Park Correctional Institute, 8100 Hwy. 64 East, Avon Park, FL 33825

**Defendants**:

**Secretary, Florida Department of Corrections (FDC):** The Secretary of FDC is responsible for overseeing the operations of the Florida Department of Corrections and ensuring that inmates receive adequate medical care. Defendant is sued in both his individual and official capacities. Address: 501 South Calhoun Street, Tallahassee, FL 32399-2500.

**Centurion Health, Correctional Healthcare:** The parent company of the LLC (Centurion of Florida, LLC) private medical company responsible for providing healthcare services to inmates in FDC facilities, including Cross City Correctional Institute, at all times relevant to this Complaint. 21251 Ridgetop Circle, Suite 150, Sterling, VA 20166. Defendant is being sued in both individual and official capacities.

**Centurion of Florida, LLC:** A private medical corporation providing healthcare services to inmates in FDC facilities, including Cross City Correctional Institute, at all times relevant to this Complaint. Centurion of Florida, LLC is located at 7700 Forsyth

Blvd Saint Louis, MO, 63105-1807 United States. Defendant is being sued in both individual and official capacities.

**Warden John/Jane Doe, Cross City CI:** Warden John/Jane Doe was the warden at Cross City CI at relevant times and was responsible for overseeing the operations at CCCI and had a custodial duty to ensure that inmates under his wardenship received proper medical care. Defendant is sued in both his individual and official capacities. Address: Cross City CI, located at 568 NE 255th St, Cross City, FL 32628.

**Warden Dawson, Avon Park CI:** Warden Dawson is presently the warden at Avon Park CI and is responsible for overseeing the operations at APCI and has a custodial duty to ensure that inmates under his wardenship receive proper medical care. Defendant is sued in both his individual and official capacities. Address: Avon Park CI, located at 8100 Highway 64 East, Avon Park, FL 33825.

**John/Jane Doe, CHO (Chief Health Officer Cross City Correctional Institute):** Defendant John/Jane Doe, FDC, CHO was the Chief Health Officer employed by Centurion and responsible for Plaintiff's medical care while he was at Cross City CI, located at 568 NE 255th St, Cross City, FL 32628. Defendant is being sued in both individual and official capacities.

**John/Jane Doe, FDC, Transport Officer (TBN, Cross City CI):** Defendant John/Jane Doe, FDC, Transport Officer was employed by Centurion and responsible for Plaintiff's being transported back to the hospital for follow-up care while he was at Cross City CI, located at 568 NE 255th St, Cross City, FL 32628. Defendant is being sued in both individual and official capacities.

**L. Petersen, ARNP:** Defendant Petersen is an Advanced Registered Nurse Practitioner (ARNP) employed by Centurion and responsible for Plaintiff's medical care while he was at Cross City CI, located at 568 NE 255th St, Cross City, FL 32628. Defendant is being sued in both her individual and official capacities.

**D. Coffey, LPN:** Defendant Coffey is a Licensed Practical Nurse (LPN) employed by Centurion and responsible for Plaintiff's medical care at Cross City CI, located at 568 NE 255th St, Cross City, FL 32628. Defendant is sued in both individual and official capacities.

**M. Hyatt, LPN:** Defendant Hyatt is a Licensed Practical Nurse (LPN) employed by Centurion and responsible for Plaintiff's medical care at Cross City CI, located at 568 NE 255th St, Cross City, FL 32628. Defendant is sued in both individual and official capacities.

**Dr. Eduardo, CHO (Avon Park CI):** Defendant Dr. Eduardo, FDC, CHO is the Chief Health Officer employed by Centurion and responsible for Plaintiff's medical care while he is at Avon Park CI, located at 8100 Highway 64 East, Avon Park, FL 33825. Defendant is being sued in both his individual and official capacities.

## Jurisdiction:

This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331 (federal question jurisdiction), 28 U.S.C. §1343(a)(3) (civil rights), and 42 U.S.C. §1983. This action arises under the Eighth and Fourteenth Amendments of the United States Constitution, which prohibits cruel and unusual punishment and guarantees equal protection under the law.

## Venue:

Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2) because the events that gave rise to this claim originated in the Northern District of Florida while the Plaintiff was incarcerated at Cross City Correctional Institute located at 568 NE 255th St, Cross City, FL 32628, which is within the Northern District United States Courthouse, 401 SE First Ave., Gainesville, FL 32601.

### C. PREVIOUS LAWSUITS BY PLAINTIFF

Plaintiff has filed no other lawsuits dealing with the same set of facts involved in this action or otherwise related to his imprisonment.

### D. EXHAUSTION OF ADMINISTRATIVE REMEDIES

Plaintiff has exhausted all available administrative remedies prior to filing this §1983 Complaint, via the FDC grievance process.

Note: Despite numerous requests for copies of grievances filed relating to their failure to provide proper medical care, the Florida Department of Corrections (FDC) has failed to respond to Plaintiff's requests for the records of his grievances (during shakedowns FDC staff has thrown away Plaintiff's legal work, including grievances).

### E. STATEMENT OF CLAIM
### CLAIM

*DEFENDANTS WERE DELIBERATELY INDIFFERENT TO THE PLAINTIFF'S SERIOUS MEDICAL NEEDS, RESULTING IN A GROSS WANTON DISREGARD FOR THE PAIN AND SUFFERING PLAINTIFF HAS UNNECESSARILY SUFFERED AS THEY FAILED TO PROVIDE HIM WITH THE PROPER MEDICAL TREATMENT THAT HE IS GUARANTEED, DEPRIVING HIM OF HIS CONSTITUTIONAL RIGHTS TO BE SAFEGUARDED FROM CRUEL AND UNUSUAL PUNISHMENT, AND HIS RIGHT TO EQUAL PROTECTION OF LAW*

The Plaintiff brings this civil action claim against all named Defendants as they have violated his constitutional rights to be protected from cruel and unusual punishment, and his rights under equal protection of law, and at all relevant times the Defendants were acting under color of state law and deprived Plaintiff of his constitutional rights as outlined in the Eighth and Fourteenth Amendments, including the right to be free from cruel and unusual punishment and the right to equal protection under the law, as they were deliberately indifferent to his serious medical needs.

The Defendants have a custodial duty to ensure that the Plaintiff (a ward of the State of Florida) received proper healthcare while he was an inmate within the FDC, which held contract with private medical provider Centurion Health Services and Centurion of Florida, LLC to care for any inmate that needed medical treatment. The Defendants' deliberate indifference to the Plaintiff's serious medical needs violated both the Plaintiff's 8th and 14th Amendments of the United States Constitution.

Such deliberate indifference was done due to a custom promulgated by FDC, Centurion Health Services, and Centurion of Florida, LLC to minimize healthcare costs by denying expensive medical treatment, irregardless the serious need for it. All Defendants, both in their official and individual capacities, are liable and have caused the Plaintiff to suffer great and irreparable harm (physically, mentally and emotionally).

The records show prima facie evidence of the Defendants' deliberate indifference as they had a wanton disregard to ensure that the Plaintiff received the proper medication that was prescribed from Physician Gary W. Gillette of NFRMC, and the failure to prescribe the Plaintiff antibiotics for preventive measures in the healing process, and the failure to send the Plaintiff to his scheduled follow-up appointment (or any follow-up at all) with Physician Gary W. Gillette at NFRMC all establish the Defendants' wanton disregard for the Plaintiff's serious medical needs.

Such deliberate indifference to a person's serious medical needs falls below the professional medical industry's standard of care, and shocks the conscience to an absolute constitutional level as any layman can visibly see with the naked-eye that the Plaintiff's clavicle bone is broken and in need of proper medical care.

### F. STATEMENT OF FACTS

On February 10, 2010 Ricky    Oliver was jogging around the recreation yard at Cross City Correctional Institute when he hit a dip in the "track" (the path that circles the recreation area had an uneven dip in it), ultimately tripping and falling head first on the ground where he would land on his left shoulder/collarbone area.

He automatically felt a sharp pain shoot through his collarbone and shoulder as he rolled on the ground, and consequently caused him to go directly to the medical department of the prison, which is operated by FDC and Centurion (private medical company) medical staffing. The Plaintiff was seen by Centurion employee L. Petersen, ARNP who prepared him to go to the emergency room at the local hospital (NFRMC), which was approved of by the Warden of CCCI.

Plaintiff was taken by FDC van escort to the emergency room at North Florida Regional Medical Center (North Florida Regional Healthcare) at 12:05pm where a series of exams took place, and beginning with Practitioner Julie Ferguson Demers, H.K. Meisenbach, MD, J. Shahan, MD, D.E. Jackson, MD, Rachel Layfield, RT, and Gary W. Gillette, MD approximately between 2pm (1400) and 3:30pm (1530).

In Exam #003873863 - CT clavicle wo contrast. Julie Ferguson Demers, Practitioner, Rachel Layfield, RT and J. Shahan, MD found that there was "No evidence of fracture or subluxation. There may be some spasms. Pronounced degeneration disease is seen in the facet joints from C2 through C5 on the left. Disc degeneration is noted at C5-6 and 6, 7 without significant protrusion of disc material or osteophytes into the canal."

In Exam #003873864 - CT thoracic wo contrast, Julie Ferguson Demers, Practitioner, Rachel Layfield, RT and J. Shahan, MD found that there was "no evidence of fracture or subluxation. Disc spaces are preserved. No significant posterior protrusion of disc material is seen. No significant osteophytes projecting into the canal. Some degenerative osteophyte formation is noted in the anterior aspect of the lower thoracic vertebral bodies. The posterior elements are intact. The visualized posterior ribs are grossly intact... No obvious acute finding."

In Exam #003873865 - Chest, Julie Ferguson Demers, Practitioner, Rachel Layfield, RT and D.E. Jackson, MD found that there was a "possible left shoulder separation which will be better evaluated on left shoulder x-rays. There is a faint ring of opacity overlaying the right upper lung zone. This is not visualized in the lung views of the recent CT thoracic spine and this likely artifact from overlaying structures. The lungs are clear. No

focal infiltrates or effusions. The heart is normal size. No pulmonary vascular congestion. Aorta is non aneurysmal... No demonstrated acute cardiopulmonary process. Possible left shoulder separation that will be better evaluated on left shoulder x-rays."

In Exam #003873866 - shoulder complete Int. Ext. Let., H.K. Meisenbach, MD, Julie Ferguson Demers, Practitioner, and Rachel Layfield, RT found that there was "Clavicle subluxed superiorly 16mm at the AC joint. Widening of the coracoclavicular interval of 29mm. No fracture... Type 3 AC joint separation, as above."

In Exam #003873938 - CT ext upper wo cont. left, H.K. Meisenbach, MD, Julie Ferguson DEMERS, Practitioner, Rachel Layfield, RT found that "The proximal humerus is grossly intact. The glenohumeral and AC joints are intact. There is a questionable cortical irregularity in the mid clavicle, raising the possibility of a minimally displaced fracture. This is not that well defined. There is an apparent acute fracture of the anterior aspect of the left first rib where it joins the cartilage. This is minimally displaced. This is best seen on images 25 through 30 of the sagittal images(series 400) the no associated pneumothorax."

In the final determination, Dr. Gary W. Gillette, MD found that there was an AC joint separation and Clavicle Fracture at at 3:54/15:54 (specifically "glenohumeral and AC joints are intact, but noted was a mid-clavicular fracture. Also noted was a possible acute fracture of anterior aspect of the left first rib where it joins the cartilage (but no noted tenderness to this area exam. Wear a sling and swathe until better. Mr. Oliver will need to follow up with an orthopedist in 3-5 days for further evaluation").

Treatment was to be: Oxycodone HCO/Acetaminophen (10-325) 1 each tab orally every 4 hours as needed for acute pain (3 days). He ends the report with giving instructions for follow-up care/treatment, "Please contact the following to make an appointment for follow-up care: (Please note: The Defendant FDC has failed to provide the remaining documentation concerning this information, so the Plaintiff is unable to identify anything further).

The Plaintiff was transferred back to Cross City Correctional Institute (CCCI) where he would begin to experience the Defendants' deliberate indifference as their wanton disregard for his serious medical needs became clear and apparent, and such material fact can be seen by the Defendants' own records.

The medical records establish that the Plaintiff's injury and need for medical care/treatment was so clear that it could be seen by the naked eye; see Exhibit D, "Diagram of Injury" document where the medical staff (signature is unreadable) wrote for the Description of Injury "Deformity to Lt. Shoulder" on February 10, 2021 at 10:30am); also see Exhibit E, picture of the Plaintiff's deformed collarbone/shoulder.

Immediately the staff at CCCI began disregarding the instructions from the hospital as they refused to give the prescribed medication or care to the Plaintiff (Oxycodone-Acetaminophen) once every 4 hours, or as needed for acute pain for the next three days; opting instead in giving the Plaintiff Tylenol 3, which did nothing for the excruciating pain.

The medical staff and FDC refused to see him or acknowledge his numerous claims for medical emergencies, and with deliberate indifference disregarded Physician Gary W. Gillette's order for follow-up care at the hospital in 3-5 days after initial NFRMC emergency room visit on February 10, 2021.

Defendant L. Petersen, ARNP scheduled an appointment on February 11, 2021 for the next day February 12, 2021, yet it was never followed through with as seen on the Chronological Record of Healthcare. The next day that the Plaintiff was seen by the medical staff was February 16, 2021 a full day after he was supposed to be sent back out to NFRMC for the ordered follow-up care. At no time does Defendant Petersen, ARNP or Defendant Coffey, LPN acknowledge the failure to abide by the NFRMC doctor's order for follow-up care or medication treatment for pain as they were deliberately indifferent to such medical needs.

The Plaintiff was next seen on February 17, 2021 by Defendant M. Hyatt, LPN, and then on March 25, 2021 by Defendant Petersen without any acknowledgement of the follow-up order, or even follow-up x-rays to see, if the broken bones were healing correctly, or if there was a need for a MRI to be ordered to see whether tendons or ligaments were damaged.

On April 21, 2021 Defendant Coffey and Petersen documents seeing the Plaintiff, but rather than noting the failure of not properly treating the Plaintiff the two defendants simply note the Plaintiff's "angry appearance." They note his "hostile/angry demeanor" once again on April 22, 2021 again with no treatment.

At no time does the Plaintiff receive any follow-up care/treatment, and only was seen after expressing his anger over the deliberate indifference of his medical needs. The record establishes prima facie evidence surrounding the material facts of the Defendants' deliberate indifference to his serious medical needs; see, Exhibit B and C herein (the hospital intake records and the FDC medical chronological records in regards to all dates dealing with this incident).

## SUMMARY OF FACTS

### *CAUSATION*

The Defendants Secretary, Florida Department of Corrections (FDC), Centurion Health, Correctional Healthcare, Centurion of Florida, LLC, Warden John/Jane Doe, (Cross City CI), Warden Dawson, (Avon Park CI), John/Jane Doe, CHO (Chief Health Officer, Cross City CI), John/Jane Doe, FDC, Transport Officer (Cross City CI), L. Petersen, (ARNP, Cross City CI), D. Coffey, (LPN, Cross City CI), M. Hyatt, (LPN, Cross City CI), and Dr. Eduardo, CHO (Avon Park CI) are named defendants who acted under color of State law, and deprived the Plaintiff of his United States constitutional rights.

On February 10, 2010, Plaintiff Ricky     Oliver was jogging on the recreation yard at Cross City Correctional Institute when he tripped and fell, injuring his left shoulder and collarbone. (See, Exhibit 'A, hospital intake records, and Exhibit 'C, photo of Plaintiff's Clavicle bone that any layman can see needs medical treatment). The causation is

identified within the Defendants' deliberate indifference to the Plaintiff's serious medical needs, where each Defendant acted "under color of state law" and that their actions deprived the Plaintiff of a federally protected constitutional right, specifically relating to be safeguarded against inadequate medical care, essentially violating Plaintiff's Eighth Amendment and Fourteenth Amendment rights.

Plaintiff immediately sought medical attention and was sent to North Florida Regional Medical Center (NFRMC) for emergency care, and upon examination, it was found that Plaintiff suffered a Type 3 acromioclavicular (AC) joint separation, a clavicle fracture, and a rib fracture. He was prescribed pain medication (Oxycodone-Acetaminophen) and instructed to follow up with an orthopedist in 3-5 days. (See, Exhibit 'A, hospital intake records.)

Upon return to Cross City Correctional Institute, Plaintiff's medical needs were deliberately disregarded as the Defendants failed to administer prescribed medication, denied follow-up care, and refused to send Plaintiff to his scheduled follow-up appointment at NFRMC; opting to leave the Plaintiff to suffer with a broken Clavicle bone and rib untreated. (See, Exhibit 'B, FDC Medical Chronological Records.)

## **POLICY AND CUSTOM**

**Defendant Secretary, FDC, John/Jane Doe, Warden CCCI,** and **Warden Dawson APCI,** has a custodial duty to ensure that the Plaintiff receives proper medical treatment/care while he is a ward of the State of Florida, and has contracted with **Centurion of Florida, LLC,** and **Centurion Health, Correctional Healthcare** to provide medical treatment to all incarcerated individuals within the FDC. The FDC, Centurion of Florida, LLC, and Centurion Health, Correctional Healthcare all have promulgated a culture and practice against the inmate population of being deliberately indifferent to their serious medical needs by denying proper medical treatment just because the treatment is expensive, and the Plaintiff has suffered cruelly and unusually due to this policy and custom.

The fact that the above parties have created policies and customs that deny necessary medical treatment to the incarcerated population to save money is a widespread practice that plays out everyday within the FDC. The material fact can be seen from the plethora of lawsuits against the Defendants for such policies and customs, and the policies in place that fires and threatens to sue any employee who gives out orders medical treatment that Centurion seems unnecessary. Such policies, along with the practice of treating the incarcerated individual as "subhuman" are the moving force behind the Plaintiff not receiving adequate medical care for his broken clavicle bone and/or broken rib, and such are prima facie evidence of the Defendants' actual and constructive wanton disregard to the professional standards within the medical field, and against the Plaintiff.

**Centurion of Florida, LLC,** and **Centurion Health, Correctional Healthcare** are the corporate medical providers that have been contracted to provide medical treatment to all incarcerated individuals within the FDC, and their policies and customs are the direct causation of the deliberate indifference the Plaintiff suffered. Such deliberate indifference to the Plaintiff's serious medical needs is violative of his right to be protected against cruel and unusual punishment and equal protection of law.

**Defendant Secretary, FDC, John/Jane Doe, Warden CCCI,** and **Warden Dawson APCI** all have a custodial duty to ensure that incarcerated individuals receive proper medical treatment, and have to approve sending an inmate to the emergency room for medical treatment and the budget of such decisions, and by them being respondents on the grievances the Plaintiff has filed, establishes that they each have subjective and objective knowledge of the Plaintiff's serious medical needs and chose to be deliberately indifferent to those needs.

**Defendants John/Jane Doe, CHO, John/Jane Doe, Transport Officer, L. Petersen, ARNP, D. Coffey, LPN, and M. Hyatt, LPN (CCCI),** and **Dr. Eduardo, CHO (APCI)** continued to ignore Plaintif's medical needs and failed to ensure proper care. Despite numerous complaints and documented requests for treatment, the Defendants failed to provide necessary follow-up care and/or medication.

Defendants' deliberate indifference to Plaintiff's medical needs resulted in unnecessary and severe physical, mental, and emotional suffering, which continues to this day. The FDC Chronological Records take now of the several times the Plaintiff requested medical attention for the pain and suffering he was experiencing due to the broken clavicle bone, and even takes special note of his angry state, yet the Plaintiff never received proper medical treatment for his broken bones. Such malicious and sadistic wanton disregard establishes prima facie case of deliberate indifference to the Plaintiff's serious medical needs is violative of his right to be protected against cruel and unusual punishment and equal protection of law.

## STANDARD OF REVIEW

"A core principle of Eighth Amendment jurisprudence the area of medical care is that prison officials with knowledge of the need for care may not, by failing to provide care, delaying care, or providing grossly inadequate care, cause a prisoner to needlessly suffer the pain resulting from his or her illness." ***McElligott v. Foley***, 182 F.3d 1248, 1257 (11th Cir. 1999)

To state a claim under 42 U.S.C. §1983, a Plaintiff alleges that 1.) the defendants deprived him of a right under the United States Constitution or federal law, and 2.) such deprivation occurred under color of State law. See, ***Bingham v. Thomas***, 645 F.3d 1171, 1175 (11th Cir. 2011).

In the instant Complaint the Plaintiff has presented material facts that the Defendants violated both his 8th and 14th Amendment Rights, and that they have done this under color of State law.

In the context, "The 8th Amendment can give rise to claims challenging ... and the deliberate indifference to a prisoner's serious medical needs." ***Thomas v. Bryant***, 614 F.3d 1238, 1303 (11th Cir. 2010)

To prove such the Plaintiff must meet the objective component by showing 1) that he had a serious medical need, 2) that the Defendants were deliberately indifferent to that need, and 3) that the injury was caused by the Defendants' wrong conduct; see **Goebert v. Lee County**, 510 F.3d 1312, 1326 (11th Cir. 2007).

In the Plaintiff's case he did have a serious medical need; the Defendants through their acts of omission (he lack of treatment did cause unnecessary injury, pain and suffering) were deliberately indifferent to that need; and that the pain and suffering was caused by their gross wanton disregard for the Plaintiff's well-being.

The material fact that the Defendants' deliberate indifference was birthed out of their prejudicial wanton disregard of him being an inmate, and the policies overseeing supervisors to deny necessary care/treatment to the incarcerated population in the effort to save money.

To satisfy the objective component a Plaintiff must show that a medical need that is diagnosed by the physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for medical attention. See, **Goebert**, quoting **Hill v. Dekalib Reg.l Youth Det. Ctr.**, 40 F.3d 1176, 1187 (11th Cir. 1994)

To prove deliberate indifference, a Plaintiff has to prove 1) subjective knowledge of a risk of serious harm, 2) disregard of that risk, and 3) by conduct (whether that's by acts or omissions of acts) that is more than gross negligence. See, **Townsend v. Jefferson County**, 601 F3d 1152, 1158 (11th Cir. 2010)

The Defendants' conduct was more than gross negligence, it was purposeful, deliberate, and knowledgeable to the point that it would shock the conscience of any who would look upon the wanton disregard as even a lay person not have disregarded giving medical treatment.

A core principle of the 8th Amendment in the area of medical care is that prison officials with knowledge of the need for care may not, by failing to provide care, or providing

grossly inadequate care, a prisoner to needlessly suffer the pain resulting from his or her injuries. **_McElligot v. Foley_**, 182 F.3d 1248, 1257 (11th Cir. 1999)

## CONCLUSION

There was nothing accidental about their deliberate indifference as the Plaintiff continuously pointed out the fact that he needed medical care for what was clearly a broken bone (both from the visible eye and from the hospital records). How continuous complaints, grievances, and requests, and the record itself establishes that they had a wanton disregard for his medical needs. The material fact that they never sent the Plaintiff back out as the hospital physician ordered for follow-up care shows their deliberate indifference.

A jury should be allowed to judge whether the Defendants' acts of omission were deliberately indifferent to the Plaintiff's serious medical needs. Their acts were so grossly incompetent, inadequate, and excessive that it would shock the conscience and was intolerable to fundamental fairness. See, **_Harris v. Thigpen_**, 941 F.2d 1495, 1505 (11th Cir. 1991); and **_Taylor v. Adams_**, 221 F.3d 1258 (11th Cir. 2000)

## G. PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff humbly prays that this Honorable Court enter judgment granting the Plaintiff:

1. A declaration that the acts and omissions described herein violated the Plaintiff's rights under the Constitution and laws of the United States of America in violation of the Eighth and Fourteenth Amendments of the United States Constitution.
2. Compensatory damages in the amount of two (2) million dollars, reparations to be divided in line with each Defendants' personal liability for their part of the deliberate indifference, and found guilty of all charges. Award Plaintiff compensatory damages in the amount of $2,000,000.00 (two million dollars) for the pain, suffering, and emotional distress caused by Defendants' actions and/or omissions.

3. Punitive damages in the amount of four (4) million dollars, the reparations divided in line with each Defendants' personal liability for their part of the deliberate indifference to his serious medical needs, and found guilty of all claims.
4. Issue an injunction compelling Defendants to provide the necessary medical care, including proper pain management, corrective surgery, and follow-up treatment.
5. Award Plaintiff the costs of this action, including reasonable attorney fees, and any other relief this Court deems just and proper.
6. All of the Plaintiff's past, present, and future legal and medical fees/expenses that derive from the February 10, 2021 injury and the litigation of this Complaint be paid by the Defendants.
7. A jury trial be granted on all issues triable by jury.

/S/ _Ricky Oliver_

Dated this _31_ day of January, 2025.

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

### AFFIDAVIT

I, Ricky Oliver, declare under penalty of perjury that the foregoing is true and correct.

Dated this __31__ day of January, 2025.

/s/ _Ricky Oliver_
Ricky    Oliver
Plaintiff, pro se, DC#102311
Avon Park Correctional Institute
8100 Hwy. 64 East
Avon Park, FL 33825


### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above federal §1983 Complaint was placed in the hands institutional officials for mailing on this __31__ day of January, 2025 to: The Northern District United States Courthouse, Clerk - Civil Division, 401 SE First Ave., Gainesville, FL 32601.

/s/ _Ricky Oliver_
Ricky    Oliver #102311
Avon Park Correctional Institute
8100 Hwy. 64 East
Avon Park, FL 33825

To: The Northern District United States
Courthouse Clerk - Civil Division
401 SE First Ave.
Gainesville, FL 32601

Date: 2/4/2025

Ref: Ricky Oliver v. Secretary, FDC, et.al.,

Dear Clerk,

I am inquiring whether I am to wait until I receive approval to proceed in forma pauperis and a case number for the attached 1983 civil rights complaint prior to sending the named Defendants their Summons and their Copy of the Complaint.

Also, upon being approved for in forma pauperis status can I have the Marshals Office or its representative serve the Defendants (I do not have the money to certify mail the Defendants a summons and the complaint).

Can you instruct me on how the Northern District wishes for me to proceed, please.

Thank You,
/s/ Ricky Oliver #102311

Ricky Oliver #102311
Avon Park C.I.
8100 Hwy. 64 East
Avon Park, FL 33825

P.S. The in forma pauperis application is waiting to be notarized and mailed; scheduled for notary on this Thursday.

FIRST-CLASS

Ricky Oliver 102311
Avon Park Correctional Institution
8100 Hwy 64 East
Avon Park, Florida.
33825

CHECKED FEB 0 6 2025

To: The Northern District, United State
Courthouse Clerk - Civil Division
401 SE First Ave
Gainesville, FL. 32601

PROVIDED TO AVON PARK
CORRECTIONAL INSTITUTION
ON 1-4-25 FOR MAILING
BY CG